Good morning, Your Honors. Catherine Young from the Federal Public Defender's Office for the Appellant. Mr. Platero, and I'd like to reserve two minutes of my time. In light of the pending en banc proceedings in Cardi and Zavala, I'll briefly talk about the issue of unreasonableness, because I think this is a case in which is so unreasonable that no matter how the decisions come down in Cardi and Zavala, reversal is required, because in this case there was uncontroverted material of evidence submitted by the plaintiff, or I'm sorry, by Mr. Platero, that the district court refused to consider and was required to consider under Section 3553. The evidence was that Mr. Platero had resided in Mexico for two and a half years since his last deportation. He'd married there, had a child there. His wife became ill and he couldn't support her and provide for her expensive medications on the meager salary that he was earning in Mexico, so he returned to the United States with the expectation that it would be a temporary stay so that he could earn money to send back to his wife, also to buy a motorized scooter so that he could start a business in Mexico. That evidence was uncontroverted. It came from the testimony by declaration and letters of his pastor. His pastor's wife spoke to the probation officer. A co-worker at the labor exchange submitted a letter, and the head of a community services organization where Mr. Platero volunteered also submitted evidence that was uncontroverted. He came here temporarily intending to return to Mexico and to support his family. And the district court said there's no reason to deviate from the advisory guideline range without making a finding of fact as to his motivation for returning, but didn't make a finding of fact as to his motivation of returning. In fact, didn't consider this material evidence that the court was required to consider under 3553 because it was relevant to the nature and circumstance of his offense, and it was also relevant to his history and characteristics. Now, another issue on which the district court refused to make a finding of fact was the Mr. Platero's uncontroverted evidence that there were. I'm sorry. Kennedy, Your objection is that although this evidence was submitted, the judge in the sentencing hearing or the sentencing colloquy did not specifically make a finding one way or the other as to the motivation of Mr. Reyes-Badero when he came back from Mexico. Is that correct? Yes, she said. I'm sorry. This is not a 1326 prosecution. This is a felon in possession of firearms. So the fact that he's found here illegally, is that an element here? I'm having difficulty. Oh, it is a 1326, Your Honor. It is a 1326. Yes. I'm sorry. I only have a 922-G1 here. The judgment on page 80, he's convicted of 1326. In this proceeding? In this proceeding. All right. Pardon me. Thank you for correcting me. So the second issue is that Mr. Platero submitted uncontroverted evidence again that there were similarly situated defendants who had received fast-track sentences that had multiple prior deportations, multiple prior felonies, and also prior 1326 convictions, and they still received fast-track adjudication. And that was relevant, again, under 3553. For those of us who haven't been involved in fast-track sentencing, do you want to give us a little explanation of what you mean by that phrase? Yes. The fast-track program is offered by the government to certain defendants. They have their own criteria. They give them a 30-month sentence as opposed to something like a 70-month sentence that Mr. Platero received. And Mr. Platero argued that he was similarly situated, because under 3553, defendants who have been – who have similar conduct, the Court is required to look at whether defendants have been convicted of a similar crime and who have similar conduct, have to be – the district court is required to avoid unwanted – unwarranted sentencing. Pardon me for interrupting you. Sorry. What's fast-track about it? Would you explain the term fast-track? It means that they go through a disposition procedure that is faster. They plead. They plead guilty, right? They plead guilty to 1325. Was that offered to Mr. Reyes Platero? No, it was not. And the government – Was there any indication as to why it was not offered? Did he ask for it? There's nothing in the record on that issue. Is there anything in the record showing he asked for it? No. Well, the reason is I think they don't have it in the central district, but isn't that right? I'm sorry, Your Honor. They don't have a fast-track program in the central district. They do. They did at the time. They do have a fast-track program. But hasn't the Ninth Circuit already, you know, addressed this issue about fast-track? It has been addressed in situations like under the sentencing guidelines. In this case, we're saying that this is 3553. And the district court in this case said, well, the government has prosecutorial discretion. That's the government's argument. No, but the fast-track goes to sentencing guidelines. In other words, you know, you get so many, you know, so many points off your sentencing under the guidelines if you comply with the fast-track program, right? Yes, but in this case, we're saying that we're not arguing under the sentencing guidelines. We're arguing under 3553. Which states that the court must avoid unwarranted sentencing disparities between But under Booker, you see, I mean, I think it's still a lot. First, we have to determine whether the, you know, the guideline was appropriate under the guidelines, the sentence. And then we go to the 3553 factors, right? That's correct, Your Honor. So it seems to me where we take into account whether there's some unwarranted disparity under the fast-track is in the first part of the sentencing determination, namely, whether this is a proper guideline sentence. So it seems to me the old case is still control on that issue. Well, I think we're not raising it as an issue under the guidelines. We're not contending that his sentence was, that his guideline range was appropriate. That's what I'm saying. I think you have to raise it under the guidelines because that's what it is. It's a guideline issue. The fast-track is to get somebody, you know, fewer points under the guidelines. That's the whole purpose of the fast-track, right? Well, I think the fast-track. What is your understanding, going back to Judge Baye's question, what is your understanding of the fast-track program? In other words, when the defendant takes advantage of the fast-track, what does he or she get? They usually, I think at this point, there was a 30-month sentence that they got. Well, you get X points off, right? You get a lower calculation under the guidelines. Is that what you get under the fast-track? Yes. All right. So it's a guideline issue is what I'm saying. Fast-track. By definition, that's what it is. Well, I think in this case the court is like saying, well, you know, the fact that he didn't get three points off for acceptance of responsibility, it's not a guideline issue. It's unreasonable. What's the difference? You can't say that. Well, if there were. It is a guideline issue. No, but I think because in this case there's a separate section under 3553 that specifically addresses defendants with. Fast-track? No. It specifically addresses defendants with similar records who have been found guilty of similar conduct. Well, it goes to the you could make that same argument about getting three points off for acceptance of responsibility. Well, it's one of the factors under 3553A, right? Well, if it were a factor, then I think you could make that argument. About everything. And so the guideline calculation would be, you know, superfluous and surplus. And instead of consulting them in an advisory fashion like Booker said, we should just throw them away and just ask one question, well, what's a reasonable sentence, right? Well, I think under 3553 there are a number of factors to consider. One is the guidelines, and a separate factor is sentencing disparities, which is how the evidence was presented in this case. Has the Ninth Circuit ruled on the issue that if you have somebody with a 1326A and a 1326B, you should try to give them approximately the same sentence under 3553? I don't think that 3553 has been addressed yet because the Booker decision is of such recent vintage, and I think the Ninth Circuit is still trying to decide in Cardia But I think that the issue of unwarranted sentencing disparities is an issue that has to be addressed under the 3553 factor separately from the sentencing guideline issue. But let me move on to, and I just wanted to make an aside, I think you gave me 20 minutes. Am I supposed to have 20 minutes? You've got 1114. Okay. I just, I thought that I was supposed to have 10 minutes. I'll move on to the Rule 32 issue, where, which are similar issues to the ones that we've been discussing before, where there are controverted matters material to sentencing where the government, the Court did not make a finding. One is the Defendant's reasons and motives for returning to the United States. We presented uncontroverted evidence regarding those motivations. The district court declined to make a finding and said there was no reason to deviate without making a finding. Why does that make a difference in sentencing? What his motive was? It's relevant to the nature and circumstances of his offense. We're not denying that he returned to the United States illegally, but the fact that he did so to support his wife, that he intended to reside here only temporarily, that he worked steadily while he was here, sent money back to his wife, worked towards buying the scooter that would help him start a delivery business in Mexico. That's why most of the undocumented aliens from Mexico come here, for economic reasons? I don't know what most of them are. I mean, I know what Mr. Platero did, and I think that all the evidence that we submitted was that he worked hard, he volunteered, he was very religious, and he helped his church, and so everyone spoke very highly of him, and everyone stated that he had come back here to help his family, and that he intended to return to Mexico once he had achieved the goals that he set. Well, all this other business about, you know, he worked hard, he was in the church and all that, the court considered that part, didn't it? I don't think so. The court said, I'm not going to deviate from the guideline range, and the guideline range is composed almost exclusively of his criminal history. The guideline range was driven by the fact that he had a 16-level enhancement because of a prior conviction, and then he had criminal history category and points because of his prior conviction, so almost the entirety of his sentence was driven by his criminal history, and the court said in light of his criminal history, and without making a finding of facts as the reason for his returning, I'm not going to deviate from the guideline range. I'm not contending that the court was required to consider those factors under 3553 and was also required to make findings under Rule 32. Kennedy, did you ask the court to make the finding at the time of sentencing? I'm not sure that there was a specific request to make a finding. There were issues that the defense presented and the court said, I'm not going to make a finding, so I don't know that there was a specific request. It would have been easy to resolve that, I suppose, if counsel had said that, right? You just say, well, would the court please make a finding under Rule 32? That's possible. I guess once the court said, I'm not going to make a finding, the counsel didn't ask for one. If there's no other questions as to the reasonableness, I'd like to turn to the supervised release conditions. And in this case, there are major discrepancies between the oral imposition of supervised release conditions at sentencing and the written judgment. The court did delete in the written judgment some of the conditions that we've challenged here, but there's no explanation why, which is why we're here on appeal, because the oral supersedes the written. But I think that in one case we've got a case that's not enforceable if it's not written down, is it? Well, generally the rule is that the oral pronouncement of a sentence supervises the written. So I felt that we needed to, because of that discrepancy and because of that concern, I felt that we needed to clarify the record and make sure that these oral conditions, most of which are objectionable, were never enforced against Mr. Platero. Why don't you turn to the specific ones you find the most objectionable? Well, one of them is Condition 6, the fact that he's required to report to the predation office after returning to the United States. That was upheld in Rodriguez-Rodriguez, but that's also where there's a petition for rehearing pending in that case. And we think one of the reasons for the petition for rehearing in that case is applicable to Mr. Platero as well, because they had, in Rodriguez-Rodriguez, the Ninth Circuit distinguished, say to a previous decision on the ground that there was no condition requiring Mr. Rodriguez-Rodriguez to answer all reasonable inquiries. There was such a condition in Rodriguez-Rodriguez, and there is such a condition here that he's required to answer truthfully inquiries by the probation officer. So we think that hopefully Rodriguez-Rodriguez will be reversed on a petition for rehearing, and that should be – that will be applicable here as well. Condition Number 10, the plethysmograph, the government in its 28J letter conceded that it had failed to meet its burden of proof on that condition, and the district court had failed to meet applicable findings, and suggested there should be a limited remand. But because there are so many other issues here, I think there needs to be more than a limited remand. So the plethysmograph obviously has to be reversed, and for similar reasons, the condition that he take all prescribed medications in Williams, Williams requires the court to make on the record findings that it's medically grounded, a specific finding of overriding justification and medical appropriateness. No such findings were made in this case. It was simply imposed. And there was an objection, so it's not plain error review. There was the prescribed medication that was involved, or is that just a general statement? It's just as a part of his sex offender treatment. He's required to take any prescribed medication. So we don't know what it is, but potentially it could be within the scope of Williams. And then Conditions 13, 14, and 17, which limit him, his activity of frequenting parks in public areas which are used by minors. As we note in our brief, that was approved in Riordan, but in Riordan there was a history and a finding that he posed a risk for minors, where in this case the only the conviction that resulted in these supervised release conditions was one relationship some time ago with one minor. How old is that conviction, this defendant's conviction? I think 1996. So I think for those grounds, he doesn't pose a risk to minors, and those conditions are inappropriate. And all that, I'll submit in. So at the time of sentencing, he was about 8 or 9 years old, the conviction, at the time of sentencing, right? I think so, Your Honor. Something like that. Okay. Go ahead. I think it was 1996. I don't have the PSR in front of me. I'm sorry. But I'll reserve the rest of my time for rebuttal. Thank you. May it please the Court, Matthew Sloan for the appellate, the United States of America. Your Honors, I think the primary issue here is indeed whether or not the 70-month sentence for Mr. Platero was reasonable. And the government would submit that whether the court in the en banc panel in Zavala-Carty ultimately adopts the government's position, which is that the guidelines, the advisory guidelines, are presumptively reasonable, or whether the court adopts another position that the guidelines are merely a starting point, as this Court has earlier announced in... Cantrell? In Cantrell, yes, Your Honor. The government would argue that, in this case, the guideline, the advisory guideline in the ultimate sentence was reasonable and that the court followed the appropriate procedures in determining the appropriate sentence. First of all, in this case, although the government has argued that it was appropriate to consider the advisory guidelines as presumptively reasonable, in this court, the court really used it just as a starting point. There's no evidence that the court placed any undue weight on the advisory guideline range. And, in fact, if the court... I don't think it does too much good to argue, you know what I mean, against the background of our not knowing what the law is going to be until Zavala is decided. Why don't you turn to those issues that are likely not to be affected by Zavala-Carty, namely, like, did the court comply with Rule 32, and what about the conditions of supervised release and so forth? Okay. Your Honor, with respect to that, I think the court did comply with Rule 32. Rule 32 requires... He didn't make any findings on these issues, did he? Well, Your Honor, actually, the record is, you could say it's ambiguous, but I think that the court initially said, and I'm referring to, I think, page 64 of the excerpts of record. Sixty-four, go ahead. Sixty-four. This is when the court initially pronounced a sentence. And the court initially says that the court sees no reason to deviate from the advisory guidelines range without making a finding of fact as to the defendant's motivation for returning. Subsequently, though, on the following page, on page 65, the court, after it has taken into consideration not only the advisory guideline range, but a series of other 3553 factors, including the defendant's lengthy criminal record, his risk of recidivism, the court set forth this... Are you referring to a specific page here? Yes, I'm referring to page 65. Okay. Go ahead. And I think if the court looks at that, you'll see that the court used the guidelines as a starting point. It considered the other 3553 factors. And then it actually says in the middle of the page, if you look at line 12, the court says, so when balanced against the fact, even if it be one, that he was here to assist the family, the court finds that the 70-month sentence is reasonable. In other words, the court, although the court didn't make an express finding about the motivations, the court said not only wasn't it important to make that determination, not only would it not ultimately affect the court's ultimate sentence, so in that effect, it satisfied Rule 32, but moreover, the court says that even assuming that the defendant's position is true, that he returned for these altruistic motives, the 70-month sentence is reasonable under those considerations. Kennedy, if I'm compliant with Rule 32, I thought that if an issue was disputed in the pre-sentence report, as this one was, the court must make a determination. Your Honor, I think what Rule 32 says, that if there's anything disputed in the PSR or other controverted matters, the court must either rule on the dispute or determine that a ruling is either unnecessary or that to determine that it's unnecessary either because the matter will not affect sentencing or because the court will not consider the matter in sentencing. And I think that it's fairly clear here that the court is saying it would not affect sentencing. Even if it were true, I don't need to make the finding, but even if it were true, it would not affect my sentence, because ultimately, I think the court was thinking along the lines that Judge Tshishima has indicated, that the motivation here is not really relevant. And in fact, in many of these cases, the motivation is an economic motivation. And the fact here is that this person had, Mr. Platero, had such a substantial criminal record, including not only the aggravated felony that caused the 1326b2, but in fact, he had previously been convicted of this very same offense, i.e., entering the country illegally after having been convicted of a, and deported following a felony conviction. So your position is, as to the Rule 32 issue, what you've read indicates that the judge found it was unnecessary or irrelevant to sentencing? Yes, Your Honor. And for that, you rely on this little paragraph on page 66, right? It's page 65, Your Honor. 65, excuse me. Yes. That is what I'm relying upon. In other words, the court assumed that the defendant came across for purposes of family need, and then they went ahead and sentenced him to me. Well, I think what the court said is the court didn't need to make the finding, but even assuming that were the case, it wouldn't affect the court's decision that a 70-month sentence was appropriate and reasonable, taking into consideration the involvement. What is he saying there, in effect, on page 65, that, well, it really doesn't affect my sentencing determination, even if I assume that's true, it won't make any difference? Is that what he's saying? Your Honor, Judge Collins, I believe that's a fair paraphrase, that even if the record that he engaged in here, which is just what the statute is intended to encompass, is to penalize people for reentering the country or being found here illegally after having been deported following conviction for an aggravated felony. And the court takes that seriously, and given that, and given his substantial prior criminal record and the clear risk of recidivism as evidenced by the fact that not only did he have a substantial criminal record, but he had been deported five prior times and been convicted of this very same offense prior to this, given all of those factors, the court didn't need to even take into account the motivation the ---- You would not be upset if we deferred submission until we hear from Zavala? Your Honor, I think that it would be appropriate to defer submission on that basis. That having been said, what I'm saying is that even if the court in Zavala doesn't adopt the government's position, which is the position we've argued in this case and I believe the government has argued before the en banc panel, which is that the guidelines are presumptively reasonable. Your Honor, if you have no further questions on that, let me move to, I think, the other issue that Appellant brought up, which was this issue of the fast-track sentence and whether there was an unwarranted sentencing disparity. First of all, just to clarify, in the Central District, the U.S. Attorney's Office does have a fast-track program. Certain individuals who could be prosecuted under 1326 are offered the opportunity to plead to either a single conviction under 1325. If it's their first conviction, that would be a six-month statutory maximum. Or in other cases, they're offered the opportunity to plead to two counts of 1325, which would be a stat max of 30 months, six months on the first conviction and 24 on the second. In certain cases, that is offered to certain defendants. It was not offered to this defendant here. Defense counsel in the district court brought up that and claimed that there had been, that the government had unfairly denied him this opportunity. They did submit certain evidence about other people who they claimed were similarly situated who had received fast-tracks. The government took the position that it was inherently in the government's prosecutorial discretion to make those decisions. And Judge Collins agreed with that? Judge Collins agreed with that. And she found on that basis that there was no unwarranted sentencing disparity. And, in fact, the similarly situated individuals that the court should look at when determining whether or not there was a disparity in this case would be other individuals who were convicted of the same offense as this person was convicted of, which is 1326b2. And for those individuals, you know, as I said, in this case, he was given a sentence which was at the low end of the advisory guidelines, although the court did take into consideration the other 3553a factors. Your Honor, with respect to the other conditions of supervised release, with respect to the 72-hour reporting requirement, as the Court is well aware in Rodriguez, Rodriguez, the Court has found that that was not a violation of the defendant's  With respect to the ---- Why is that? Doesn't he have to show up? If he once again comes across the border illegally, the probation, the supervised release condition requires him to report to the probation officer in 72 hours. Why won't the probation officer immediately arrest him and charge him with a new 1326? Well, Your Honor, the Court in Rodriguez, Rodriguez found, and the issue is whether or not it's a violation of his Fifth Amendment rights against self-incrimination. And the Court found, I think, properly, that it was not a violation because merely showing up and reporting would not require him to provide any incriminating information. There may be reasons why someone could, for instance, it's possible that someone could have permission to cross the border, that they could have gotten permission Thanks. That's the reason, Your Honor. And the Court, I think, clearly said that if the condition required the defendant to provide incriminating information, i.e., to answer further questions, then that In other words, if the probation officer asked him, well, how did you get here? Right? If he reported? Right. If the probation officer asked him, well, how did you get here? He would say, well, I snuck across the border. Your Honor, I believe that at that point the defendant may have a right not to answer that question, but the only reporting requirement was that he show up and say, here I am. Your Honor, I think the other conditions that were brought up were the condition with respect to the plasmograph test. As the Court is aware, the government has submitted a Rule 28J letter. What about this one about the, you know, take all prescribed medication? Doesn't that run afoul of some of our case law? Your Honor, I think that given the fact that the government has conceded in this case that a limited remand under Weber for the plasmograph test is warranted in this case, the Court doesn't need to reach that issue. I think that it would be advisable if this is remanded to the district court, that the district court make further findings and findings on the record with respect to whether or not medical conditions are warranted in this case. Are there some conditions here of supervised release that aren't in the written order that the defense counsel was talking about? Your Honor, I think that the oral pronouncement of the Court in some cases was more in the written J&C order. The clerk apparently didn't get down all the language. So in this case, the oral pronouncement I think is broader, and I think that that, as appellant's counsel has indicated, the oral pronouncement of the Court would control in this case with respect to what those conditions are. I don't see how you could enforce it too well if it's not in the written order, but maybe you can do things differently. I believe there's case law that says that it's the oral pronouncement, but I agree, Your Honor, that it would be preferable if the written order tracked that exactly. If there are no further questions, the government would submit. I would like to apologize to you. I had to, when I first started listening to this case, I took the book from the case that had been submitted, and that's why I asked you about the gun. I'm terribly sorry. No, it threw me for a minute. I thought, well, you have so many cases to remember. I don't know how you keep them all separate. I just want to respond very briefly to one issue. With respect to the Rule 32 issue, the rules does require the Court, if there's a controverted matter, it has to rule on the dispute or determine that a ruling is unnecessary. And here it appears, although it's not clear, that the Court is saying it's unnecessary for me to rule on the two controverted issues that we've been discussing here today. On page 59, the Court says, I don't need to make findings about, you know, the fast track program. And then subsequently on page 64, the Court says, I'm not going to deviate from the advisory guidelines without making a finding of factors to the defendant's motivation for returning. And so if the Court is saying, I'm not making a finding on those issues, then the Court is violating Booker and section 3553 because those facts are relevant to sentencing. They are the Court is mandated to consider them in sentencing. The Court has to consider under 3553 the defendant's, his history and characteristics, the nature and circumstances of the offense, and whether or not there are similarly situated defendants who have different sentences. So we're contending that the evidence that we submitted, which is uncontroverted, was evidence that the Court had to consider. And if the Court is saying, I'm not going to consider it, then the Court is violating Booker and violating 3553. Kennedy. Well, why isn't the section that the counsel cited of Rule 32 saying that if it's not found, it can be found to be unnecessary to decision? Well, I'm saying it's possible that's what the Court's saying, that it's not going to affect my sentence. Isn't that a reasonable way of reading the statement on page 65? Yes, but my point is if the Court's saying that, then the Court is saying you have presented that what implicitly the Court is saying is you've presented material evidence that's relevant to these statutory factors that I'm required to consider that I'm not going to consider. So we're saying if that's the case, if the Court is saying I'm not going to make a finding because I'm not going to consider your evidence, it's not relevant to my sentencing decision, the Court's then saying I'm not considering the 3553 factors, I'm just considering the sentencing guidelines. Because we're --- Well, that's your interpretation. What? Your interpretation is that if he doesn't consider the motivation which brought the man to cross the border illegally, he's not considering which factor under 3553A? The nature and circumstances of the offense. The offense is illegal reentry. But the nature and circumstances --- and we're not denying that he committed the statutory offense. But the nature and circumstances are he intended to be here temporarily. While he was here, he worked steadily towards his goal. There's uncontroverted evidence that he was just trying to support his wife and pay for her expensive medications and trying to build a business in Mexico. And so that distinguishes him from other 1326 defendants. And it's also relevant to his history and characteristics. His characteristics were that he was working hard, that he was trying to support his wife, that he was trying to build a business. So those factors are relevant to two of the 3553A factors, the fact that all the work that he was doing, he was volunteering. While he was here, he was helping people, volunteering, supporting his wife, and people had nothing but good things to say about him. So I think ---- Kennedy, but isn't what the judge said that even considering those, it doesn't change my view that the sentencing guideline range should apply? Well, I think that the section or the language on page 65 that the prosecutor was looking about, the citing, if you look at that, he's saying when balanced or the judge is saying when balanced against the fact, even if it be one, that he was here to assist his family, the court finds that this is the type of behavior that the statute is intended to capture. So she's saying this is illegal reentry, and there's no reason to deviate from the advisory guidelines. So it seems like she's saying ---- And I think you've got to read, and there's no reason, based on the fact that he was here to assist the family, that that isn't sufficient to deviate from the advisory guidelines. But I think also what she's saying is because he committed illegal reentry, which is the type of conduct the statute is intended to capture, I'm not going to consider those other factors. No, no, no. I think the more reasonable way to read it, in fact, that's the way I read it because maybe that's the way I feel. But, you know, most people who come across the border come across for economic reasons to assist their family. So it doesn't take them out of the heartland. It's just, you know, a fact of life associated with illegal reentry. That's what he's saying, isn't it? So, you know, it's the same as everybody else. But if that's what she's saying, that it doesn't take them outside the heartland, again, that's a guideline-centric analysis. And once you're talking about 3553, maybe you can say, yes, he's not outside the heartland. He's within that 70- to 87-month guideline range. But then that's only one of the factors the Court has to consider. The Court can't just stop there. The Court then has to consider all the 3553 factors. And among those are what are the nature and circumstances of the offense? What are the history and characteristics of the offense? Kennedy. He's already considered that in arriving at his guideline sentence, what the circumstances are. He's saying, I've considered these circumstances, and they're not any different than other people who come across the border. But those factors, the factors that we're relying on, these controvertive factors that we're talking about, are not encompassed in the guideline range. In this case, his guideline range was driven almost exclusively by his criminal history. And the types of elements that we're considering are not cognizable by the sentencing guidelines. So by saying, I'm going to impose a sentencing guideline sentence, the Court is saying, we're not going to consider all these other factors that the Court's required to consider under Section 3553. And I think I'll submit on that if you have no further questions. Thank you very much. Thank you. Okay. And the last case on today's calendar is Williams v. Runnels.
judges: Siler , Tashima, Bea